IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMES HINES,

      Plaintiff,                     No. CIV S-03-2385 GEB EFB P

      vs.

SERGEANT NUCKLE, et al.,

      Defendants.              <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding *pro se* and *in forma pauperis* with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's November 17, 2003, complaint alleges that defendants violated his Eighth Amendment rights by failing to protect him from an attack by his cellmate and failing to provide medical care for some of the injuries he sustained in the attack. Defendants filed a motion to dismiss for failure to exhaust administrative remedies on August 20, 2004. That motion was denied based on the December 22, 2004, findings and recommendations of the magistrate judge. The magistrate judge found that plaintiff had filed an administrative grievance and appealed it to each appellate level, giving prison officials the opportunity to address his claims, and meeting the requirements of 42 U.S.C. § 1997e(a).

      Defendants have renewed the exhaustion argument in a motion for summary judgment, or in the alternative to dismiss, that was filed on December 1, 2006. The motion is based on the

United States Supreme Court's reversal of the Ninth Circuit's decision in *Ngo v. Woodford*, 403 F.3d 620 (9th Cir. 2005). *See Woodford v. Ngo*, 126 S.Ct. 2378 (2006). For the following reasons, the motion for summary judgment must be granted.

**I.     Summary of Facts**

At all times relevant to this action, plaintiff was incarcerated at High Desert State Prison ("HDSP") in Susanville, California. Defs.' Mot. for Summ. J., Ex. K, Deposition of Plaintiff ("Pl.'s Dep."), at 15:10-20. Defendants Amero, Harrison, Nuchols, Tutor, and Gale were Correctional Sergeants at that prison. Defs.' Mot. for Summ. J., Exs. in Supp. Thereof ("Defs.' Ex."), Ex. A, Decl. of Amero ("Amero Decl."), ¶¶ 1-2. During the courses of plaintiff's incarceration at HDSP hostilities grew between he and another inmate named Wilson and they became enemies. However, they were not identified as enemies at any time prior to a fight between them that occurred on July 19, 2001. Pl.'s Dep., at 25:3-5; 81:6-8.

On July 6, 2001, plaintiff moved into inmate Wilson's cell. *Id.*, at 22:23-25. Plaintiff and Wilson argued over the lower bunk. Although he had a chrono, i.e. a medical determination of need, for a lower bunk, plaintiff quickly agreed to take the upper bunk. *Id.*, at 24:6-17. On July 6, 2001, plaintiff did not have any reason to fear Wilson. *Id.*, at 22:13-15; 25:6-8. Plaintiff has never been affiliated with any gang. *Id.*, at 25:1-2; 81:9-12. Between July 7 and July 10, 2001, plaintiff and Wilson did not have any problems. *Id.*, at 25:9-16; 29:4-7.

On July 11, 2001, plaintiff and Wilson argued over smoking, snoring, and exercising, and Wilson threatened plaintiff during this argument. *Id.*, at 29:8-18. Plaintiff did not tell anyone about the argument on July 11, 2001. *Id.*, at 33:7-16; 34:13-15; 34:23-35:1. On July 12, 2001, plaintiff and Wilson argued over their cell conditions. Wilson threatened plaintiff during this argument. *Id.*, at 33:14-16. On July 12, 2001, plaintiff advised Tudor and Nuchols that he was not compatible with his cellmate. *Id.*, at 39:15-17; 38:15. Plaintiff did not tell Tudor or Nuchols that Wilson had threatened him or that he feared for his safety. Pl.'s Dep., at 39:15-17; 38:15; Defs.' Ex. B, Decl. of Tutor ("Tutor Decl."), ¶¶ 3-5; Defs.' Ex. C, Decl. of Nuchols ("Nuchols

1  Decl."), ¶¶ 3-5.  Between July 13 and July 18, 2001, plaintiff did not speak to anyone at HDSP
2  about his desire to change cells.  Pl.'s Dep., at 44:6-12.  Nor did he, during that time period, have
3  any arguments with Wilson.  *Id.*, at 48:3-6.  At approximately 2:00 a.m. on July 19, 2001,
4  plaintiff told Sgt. Gale that he could no longer live in his cell and if he did, he and his cellmate
5  would fight.  *Id.*, at 48:24- 49:8.  At approximately 2:30 a.m. on July 19, 2001, plaintiff and
6  Wilson engaged in mutual combat.  Defs.' Ex. E, Decl. of Gale ("Gale Decl."), ¶ 3.
7  Immediately, defendants Gale and Amero stopped the fight.  *Id.*

8  Once an incident of mutual combat among inmates is contained and the inmates are
9  removed from the cell, they must be taken to the program office and placed in a holding cell to
10 await evaluation by medical staff.  Medical staff is sent to the program office from the
11 Correctional Treatment Center ("CTC") to evaluate the inmates and determine whether they can
12 be released back to the cell or whether further treatment is necessary, in which case the inmate
13 will be sent to the CTC for further evaluation.  Defs.' Ex. A, Amero Decl., ¶ 4; Defs.' Ex. D,
14 Harrison Decl., ¶ 4.

15 According to defendants, plaintiff was escorted to the program office after the fight and
16 was placed into a holding cell.  Harrison Decl., ¶ 3.  On July 19, 2001, he was examined and
17 treated by Britton, a registered nurse.  Defs.' Ex. G, Report of Incident; Harrison Decl., ¶¶ 5-6.
18 During the fight, plaintiff suffered a laceration above his left eye, a bloody lip, abrasions, and
19 sore ribs, groin and head.  Pl's Dep., at 65:15-66:15; James Decl., ¶ 5.  Britton examined the
20 laceration above plaintiff's eye and determined that stitches were unnecessary.  Ex. G, Report of
21 Incident; Pl.'s Dep., at 66:20-25; Harrison Decl., ¶ 5.  Britton applied Steri-Strips to close the
22 laceration above plaintiff's eye and advised him to follow up with the medical clinic in the
23 morning.  Report of Incident; Pl.'s Dep., at 66:20-25; James Decl., ¶ 5.  After examining plaintiff
24 and treating his injuries, Britton medically cleared him for placement in administrative
25 segregation.  Report of Incident; Harrison Decl., ¶¶ 5-6; James Decl., ¶ 5.
26 ////

3

1  All of the treatment provided to plaintiff on July 19, 2001, was appropriate for his
2  medical condition and consistent with community standards. James Decl., ¶¶ 6-7. Plaintiff did
3  not suffer or exacerbate any injury as a result of the treatment he received on July 19, 2001. *Id*.,
4  ¶ 8. Before plaintiff fought his cellmate on July 19, 2001, Amero did not believe, and had no
5  reason to believe, that anyone posed a threat of harm to plaintiff. Pl.'s Dep., at 70:1-22; Amero
6  Decl., ¶ 10.

7  Before plaintiff fought his cellmate on July 19, 2001, Amero was not aware of any
8  problems between plaintiff and Wilson. Pl.'s Dep., at 70:1-22; Amero Decl., ¶ 11. Before
9  plaintiff fought his cellmate on July 19, 2001, Harrison did not believe, and had no reason to
10 believe, that anyone posed a threat of harm to plaintiff. Pl.'s Dep., at 70:1-22; Harrison Decl.,
11 ¶ 12. Before plaintiff fought his cellmate on July 19, 2001, Harrison was not aware of any
12 problems between plaintiff and Wilson. Pl.'s Dep., at 70:1-22; Harrison Decl., ¶ 13. Before
13 plaintiff fought his cellmate on July 19, 2001, Nuchols did not believe, and had no reason to
14 believe, that anyone posed a threat of harm to plaintiff. Nuchols Decl., ¶¶ 3-4. Before plaintiff
15 fought his cellmate on July 19, 2001, Nuchols was not aware of any problems between plaintiff
16 and Wilson. *Id*., ¶ 5. Before plaintiff fought his cellmate on July 19, 2001, Tutor did not
17 believe, and had no reason to believe, that anyone posed a threat of harm to plaintiff. Tutor
18 Decl., ¶¶ 3-4.

19 Before plaintiff fought his cellmate on July 19, 2001, Tutor was not aware of any
20 problems between plaintiff and Wilson. Tutor Decl., ¶ 5. Approximately 3:30 a.m. on July 19,
21 2001, plaintiff was moved to another cell. Pl.'s Dep., at 73:23-74:8. On the morning of July 19,
22 2001, plaintiff assaulted his new cellmate, Granville, on two separate occasions. Pl.'s Dep., at
23 74:7-76:10. Neither plaintiff or Granville reported the assaults. *Id*., at 76:11-16.

24 The Inmate Appeals Branch (IAB) issues Director's level review of inmate appeals for
25 California Department of Corrections and Rehabilitation. Defs.' Ex. I, Decl. of Grannis
26 ("Grannis Decl."), ¶ 4. Plaintiff did not obtain a decision from the Director's level of Review

4

regarding this incident. Pl.'s Compl., at 4; Grannis Decl., ¶¶ 7-10; Defs.' Ex. J, Wagner Decl., ¶¶ 12-14. Plaintiff did not file a grievance regarding this incident until January 8, 2002. Grannis Decl., at 4.

## II.     Renewed Motion to Dismiss for Failure to Exhaust Administrative Remedies

Defendants' motion to dismiss challenges whether plaintiff has met the requirement of the Prison Litigation Reform Act (PLRA) that "[n]o action shall be brought" until available administrative remedies are exhausted. 42 U.S.C. § 1997e(a). The Ninth Circuit has held that the PLRA's exhaustion requirement is not jurisdictional, but rather is an affirmative defense.

## III.    Standards Applicable to This Motion

Defendants move to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure. While the Ninth Circuit has stated that Rule 12(b) is the proper mechanism for resolving questions arising under 42 U.S.C.§ 1997e(a), *Wyatt v. Terhune*, 315 F.3d 1108 (9th Cir. 2003), the reason underlying that decision has been undermined. The Ninth Circuit found that failure to exhaust was a matter in abatement which should be raised in a motion made under "unenumerated Rule 12(b)."[1] *Wyatt*, 315 F.3d at 1119. However, the United States Supreme Court recently clarified that failure to exhaust is an affirmative defense which defendant has the burden of pleading and proving. *Jones v. Bock*, ___ U.S. ___, 127 S.Ct. 910, 921 (2007). Federal courts appropriately consider affirmative defenses on summary judgment. Here, defendants rely on evidence extrinsic to the complaint that should be considered under the Rule 56 standards. Defendants' motion necessarily requires the court to consider the affidavits and exhibits that were presented for the purpose of proving the absence of exhaustion. Accordingly, the court finds that a motion for summary judgment is the proper mechanism for resolving the question of

---

[1] *Wyatt* is clear that regardless of nomenclature, a motion attacking failure to exhaust is not a challenge to the sufficiency of the complaint. It is a motion in which defendant must raise and prove by evidence the absence of exhaustion. *Id.* In this regard, the Ninth Circuit in *Wyatt* provides further guidance. It recognizes that when the district court looks beyond the pleadings to a factual record in deciding the exhaustion motion it necessarily does so under "a procedure closely analogous to summary judgment." *Id.*, n.14

5

whether plaintiff satisfied the exhaustion requirement.

### IV. Summary Judgment/Rule 56 STANDARDS

Summary judgment pursuant to Fed. R. Civ. P. 56(a) avoids unnecessary trials in cases with no disputed material facts. *See Northwest Motorcycle Ass'n v. United States Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). At issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56 serves to screen the latter cases from those which actually require resolution of genuine disputes over facts material to the outcome of the case; e.g., issues that can only be determined through presentation of testimony and evidence at trial such as credibility determinations of conflicting testimony over dispositive facts.

> In three recent cases, the Supreme Court, by clarifying what the non-moving party must do to withstand a motion for summary judgment, has increased the utility of summary judgment. First, the Court has made clear that if the non-moving party will bear the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Second, to withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242 (1986) (emphasis added). Finally, if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). No longer can it be argued that *any disagreement* about a material issue of fact precludes the use of summary judgment.

*California Arch. Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir.), *cert. denied*, 484 U.S. 1006 (1988) (parallel citations omitted) (emphasis added). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (quoting *Celotex*, 477 U.S. at 322).

Thus, to overcome summary judgement an opposing party must show a dispute that is both genuine, and involving a fact that makes a difference in the outcome.[2] Two steps are necessary. First, according to the substantive law, the court must determine what facts are material. Second, in light of the appropriate standard of proof, the court must determine whether material factual disputes require resolution at trial. *Id.,* at 248.

When the opposing party has the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). The moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex v. Cattret*, 477 U.S. 317, 323-24 (1986).

If the moving party meets its burden, the burden shifts to the opposing party to establish genuine material factual issues. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586. The opposing party must demonstrate that the disputed facts are material, i.e., facts that might affect the outcome of the suit under the governing law, *see Anderson*, 477 U.S. at 248; *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that disputes are genuine, i.e., the parties' differing versions of the truth require resolution at trial, *see T.W. Elec.*, 809 F.2d at 631. There can be no genuine issue as to any material fact where there is a complete failure of proof as to an essential element of the nonmoving party's case because all other facts are thereby rendered immaterial. *Celotex*, 477 U.S. at 323. The opposing party may not rest upon the pleadings' mere allegations or denials, but must present evidence of specific disputed

---

[2] On June 10, 2004, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

7

facts. *See Anderson*, 477 U.S. at 248.[3] Conclusory statements cannot defeat a properly supported summary judgment motion. *See Scott v. Rosenberg*, 702 F.2d 1263, 1271-72 (9th Cir. 1983).

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See Anderson*, 477 U.S. at 249, 255. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).

If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted). In that case, the court must grant summary judgment.

With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issue raised on this motion, i.e., whether the defendants acted with deliberate indifference to the plaintiff's safety. Equally critical is that "deliberate indifference" is an essential element of plaintiff's cause of action. Therefore, to withstand defendants' motion, plaintiff may not rest on the mere allegations or denials of his pleadings. He must demonstrate a genuine issue for trial, *Valandingham v. Bojorquez*, 866 F.2d 1135, 1142 (9th Cir. 1989), and he must do so with evidence upon which a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248, 252.

////

---

[3] A verified complaint may be used as an affidavit in opposition to the motion. *Schroeder v McDonald*, 55 F. 3d 454, 460 (9th Cir. 1995); *McElyea v. Babbitt*, 833 F.2d 196, 197-98 (9th Cir. 1987) (per curiam).

## V. Failure to Exhaust Administrative Remedies

The applicable statute is 42 U.S.C. § 1997e(a), which provides in relevant part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted.

This requirement is mandatory and unequivocal. *Booth v. Churner*, 532 U.S. 731, 741 (2001); *McKinney v. Carey*, 311 F.3d 1198, 1200 (9th Cir. 2002) ("Congress could have written a statute making exhaustion a precondition to judgment, but it did not. The actual statue makes exhaustion a precondition to *suit*." (citation omitted)). A prisoner seeking leave to proceed *in forma pauperis* in an action challenging the conditions of his confinement brings an action for purposes of 42 U.S.C. § 1997e when he submits his complaint to the court. *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006). Therefore, a prisoner must exhaust available administrative remedies before filing any papers in federal court and is not entitled to a stay of judicial proceedings in order to exhaust. *Id.* at 1051; *McKinney v. Carey*, 311 F.3d 1198 (9th Cir. 2002). Defendant has the burden of proving that plaintiff did not exhaust. *Brown v. Valoff*, 422 F.3d 926, 936 (9th Cir. 2005); *Wyatt*, 315 F.3d at 1119.

California prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). The regulations require the use of specific forms but contain no guidelines for grievance content. *Id.*, at §§ 3084.2, 3085. Prisoners ordinarily must present their allegations on one informal and three formal levels of review, although the informal and the first formal levels may be bypassed. *Id.*, at § 3084.5. A division head reviews appeals on the first formal level, *see Id.*, at § 3084.5(b)(3) (authorizing bypass of the first formal level when the division head cannot resolve it), and the warden or a designee thereof reviews appeals on the second formal level. *See Id.*, at § 3084.5(e)(1). Generally, completion of the third level, the Director's Level of Review, exhausts the remedy. *Id.*, at § 3084.1(a).

**VI.    Analysis**

Plaintiff filed his first appeal on January 8, 2002. Defs.' Ex. I, Grannis Decl., at 4. It contained claims arising in 2001, regarding problems he has with his cellmates. Plaintiff explains, in the body of his appeal, that he first "filed a law suit concerning this matter to the Eastern District Court ... and was told by the Court to exhaust his administrative remedies, and that this appeal is being filed for the sole purpose of exhausting his administrative remedies." The filing of the lawsuit before seeking exhaustion might explain plaintiff's delay in seeking to exhaust his administrative remedies, the filing of a federal lawsuit prior to exhaustion does not toll the 15-day limitations period for filing an administrative grievance in the prison system. Plaintiff did not file his grievance/appeal until one and a half years after the factual basis for his grievance arose. Plaintiff's appeal, at seven typed and single-spaced pages, was first denied for containing excess attachments on January 10, 2002. *See* Plaintiff's Verified Complaint ("Compl."). It was next denied on January 22, 2002, for being abusive of the appeals process for containing "excess verbiage." *Id.* It was denied again on January 28, 2002, for the same reason. *Id.* Plaintiff resubmitted the grievance on March 7, 2002, and it was denied a third time on the same basis and because it contained excess attachments, combined staff complaints with other appeal issues, and presented more than one issue that cannot be addressed by one department. *Id.* On October 24, 2002, plaintiff's appeal was finally denied as having been filed in excess of the 15-day time limit for submitting the appeal. At this point, there had been a more than six-month delay between plaintiff's last attempts to resubmit his grievance.

Understandably, plaintiff is confused and frustrated with the process. The dizzying litany of refusals to process plaintiff's multiple attempts to present an administrative appeal for what appears to be the most technical of reasons is difficult to even summarize. However, had the inmate appeals coordinator read the content of plaintiff's grievance in the first instance, the grievance could have been denied as untimely at that point. The grievance contained complaints arising in July 2001 and the appeal was dated January 2002. It is clear that plaintiff's grievance

10

1  was untimely filed regardless.

2      Based on the foregoing analysis, the court recommends that defendants' motion to
3  dismiss be granted.

4      Accordingly, it is hereby RECOMMENDED that defendants' December 1, 2006, motion
5  for summary judgment be granted and the Clerk of the Court be directed to close this case.

6      These findings and recommendations are submitted to the United States District Judge
7  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days
8  after being served with these findings and recommendations, any party may file written
9  objections with the court and serve a copy on all parties.  Such a document should be captioned
10 "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections
11 within the specified time may waive the right to appeal the District Court's order. *Turner v.*
12 *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

13 Dated:   March 6, 2008.

                          EDMUND F. BRENNAN
                          UNITED STATES MAGISTRATE JUDGE